State v. Boscawen.

STATE *v.* BOSCAWEN.

After a town has acquiesced for more than twenty years in the doings of their selectmen in laying out a highway, they are estopped from saying that the road was not legally laid out.

The selectmen of the town of B. made a return of a highway in that town in 1826, without any written petition therefor. The town soon after made the road, and kept it in repair for more than twenty years, and the town and public generally used it during the whole time.—*Held*, that the town were estopped from saying that the road was not laid out agreeably to statute law.

INFORMATION against the town for an alleged neglect to build a bridge over Merrimack river. The information set forth that there was a new highway established by the Court of Common Pleas, at the October term, 1848, in the towns of Canterbury and Boscawen, described as follows: " Beginning at a stake, standing in the centre of the old road leading from the dwelling-house then occupied by Moody Emery, in said Canterbury, to Boscawen Plain, (so called,) thirty-six feet north-easterly of the Canterbury toll-bridge, in said town of Canterbury, and proceeding from thence south, forty-five and one fourth degrees west, thirty-six feet, to said Canterbury toll-bridge; thence the same course over and across said bridge, so far as it then remained standing in said Canterbury, two hundred and twenty-

two feet, to the center of Merrimack river, being the west line of said town of Canterbury ; thence the same course across said river, over and upon that part of said bridge then standing, two hundred and twenty-two feet, in the town of Boscawen, to the west bank of said river, in said Boscawen ; thence the same course sixty-six feet, to a stake standing in the center of the old road leading from said Moody Emery's former dwelling-house to the highway leading through Boscawen Plain, (so called,) at the southerly end of the stable connected with the tavern then occupied by William P. Heath, in Boscawen aforesaid ; which highway was laid out four rods in width, and the line above described is the center of said highway."

The State produced the original record establishing the highway and bridge, as above described, by the Common Pleas, at the October term, 1848. The petitition for the road was referred to the road commissioners at the March term, 1848, and set forth that there was occasion for a new highway, &c., " commencing at or near the dwelling-house of Moody Emery, thence running," &c., to a stake standing in the center of the old road running through Boscawen Plain, &c., " at or near the southerly end of the stable connected with the tavern now occupied by William P. Heath, in Boscawen aforesaid."

It was admitted that no bridge had been built by the towns.

On the part of the defendants it appeared that in 1820 there was built a toll-bridge on the same site where the commissioners laid out the highway in 1848, which was carried away by the ice in January, 1848 ; that for many years prior thereto there had been a toll-bridge across the river, about twenty rods higher up the stream, which was carried away, and the bridge of 1820 was built as a substitute. The charter for these bridges was granted in 1803. Before 1820 the travel in the immediate vicinity of the bridge on the Canterbury side passed over land of Joseph Clough and Joseph Gerrish — Gerrish's land extending from the bridge about fourteen rods ; and prior to that time the road leading to the bridge on that side was encumbered with bars on the land of Clough and Gerrish. After the new bridge

was built, in 1820, Gerrish, Clough and others made a verbal application to the selectmen of Canterbury to lay out a highway to the bridge. No written petition was presented, but the selectmen laid out a road and made the following return :

"CANTERBURY, April 22, 1820.

" This day laid out a road at the interval to Canterbury bridge, now leading as follows, viz. :  Beginning at Capt. Joseph Gerrish's house, occupied by Nathan Moore ; then south, 46° west, 14 rods, to the river.  Then begin at said south corner of said house ; then north, 64° east, 12 rods ; then east, 26 rods ; then north, 72° east, 24 rods ; then north, 56° east, 26 rods ; then north, 39° east, 32 ; then north, 25 east, 30 rods ; then north, 13 east, 34 rods, near Joseph Clough, Esq.'s house ; then north, 59° east, 36 rods ; then north, 9° east, 33 rods ; then north, 4° east, 42 rods, to a stone at the crotch of the roads on the old town line.  Said road is three rods wide on the south and easterly side of said line.

ABIEL FOSTER,

J. M. HARPER,

THOMAS AMES,

*Selectmen of Canterbury.*

" Whereas said road goeth through land of us, the subscribers, Capt. Joseph Gerrish and Joseph Clough, Esq., we hereby agree that there shall be an open road on the foregoing line whenever there is a good passable bridge over Merrimack river where they are now erecting one, or anywhere near the same, so that said road will convene the travel of said bridge, and a drift road when there is no bridge.

(Signed)          JOSEPH CLOUGH.

" I, the said Joseph Gerrish, do hereby agree to the above for the consideration of twelve dollars, the receipt whereof I do hereby acknowledge.

(Signed)          JOSEPH GERRISH."

" The above returned road recorded April 24th, 1820.

Attest :          JOHN SUTTON, *Town Clerk.*"

It appeared that Gerrish and Clough had been dead for twenty-five years or more.

The fourteen rods across Gerrish's land had not been traveled before this laying out. One of the selectmen who laid out the road testified that there was no objection from any one to the laying out of the road ; all were desirous that it should be done.

After this return was made by the selectmen, the bars on the land of Clough and Gerrish were removed, and the public have traveled over the road from that time to the present ; a ferry, about six rods above where the bridge stood, being used to cross the river since the bridge went away, in 1848 ; and the travel turning off from the road just before reaching the river to go to the ferry, since 1848. It appeared also that the town of Canterbury made the road up to the bridge, and have ever since kept it in repair ; except the small piece between where the travel turns to go to the ferry and the river, since 1848 ; the evidence tending to show that it had been put into the warrants of the highway surveyors in different years, commencing about 1825, down to the present time. It appeared further that very few written petitions were presented for roads in this town prior to 1830.

On the Boscawen side of the river the selectmen laid out a highway as follows :

"*Return of a Road in Boscawen.*

" Beginning on the easterly side of King street, about three rods south of the south end of Esq. Oaks' stable, running north, sixty degrees east, nineteen rods ; thence north, nineteen degrees east, seventeen rods, to a white oak tree ; thence north, forty-nine degrees east, twenty-two rods, to the west bank of Merrimack river. Said road is three rods wide on the north of said line. Boscawen, May 15th, 1826.

MOSES FLANDERS,
WILLIAM H. GAGE,
JOSEPH COUCH, JR.,
*Selectmen of Boscawen.*"

" A true copy — Attest :

HEZK. FELLOWS, *Town Clerk.*"

It appeared that no written petition was presented to the

selectmen to lay out this road, and that very few written petitions for roads were presented to the selectmen of this town prior to 1830.

It appeared further that the town made this road soon after it was laid out, and have always kept it in repair, putting it into a number of the warrants of the highway surveyors of the town, commencing as early as 1831; except, however, that about one hundred and twenty feet between the bridge and the point where the travel turns to go to the ferry, has not been repaired since the bridge went away, in 1848; that the public have used it ever since it was made, except the one hundred and twenty feet, and now pass over it daily, crossing the river by the ferry instead of on the bridge, as formerly; but there are times when the river cannot be crossed without a bridge; that King's street and the road through Boscawen Plain are the same highway, and that the terminus of the road laid out in 1848 was the road leading from King's street across the river to Moody Emery's house.

The defendants also proved that the corporation of the toll-bridge had taken no steps to rebuild the same since it went off in 1848, but had voted to surrender the charter. The corporation took toll up to the time the bridge went off.

Upon this state of facts the defendants contended that the road from Boscawen Plain to the bridge had never been legally established; and so, also, with the fourteen rods next the bridge, on the Canterbury side; that the highways on both sides were laid in the manner shown to go to a toll-bridge; that they were not legally laid out, there being no written petitions therefor; that they could not be highways by dedication, inasmuch as that was prohibited by section 7, chapter 53, of the Revised Statutes; and that consequently the bridge and road laid out in 1848 did not extend to, or connect with, any highway, and were not nuisances liable to indictment.

The court overruled the positions of the defendants, and thereupon a verdict was taken, by consent, for the State, which the defendants move to set aside for supposed error in the deci-

sions of the court. And it was ordered, that the questions arising upon said motion be assigned to the determination of the Superior Court.

*Bell, Fowler* and *Bellows,* for the defendants.

This information cannot be sustained, unless the use of the bridge, by the public travel passing to it by highways or public ways, is prevented. It could not have been lawfully laid out except in such a case. Comp. Stat. 135, sec. 10.

And there could be no nuisance, if it had been lawfully laid out, in interrupting the use of a bridge not connected with highways. It should, at all events, have been left to the jury to find whether, under the state of facts proved, there was any nuisance.

1. No prosecution can be sustained for any defect, except in a public highway. 3 Chitty's Cr. Law 333. And a way leading to a church, common fields, or to a village, and terminating there, is not a highway in respect to which public prosecutions can be sustained. 3 Bac. Abr. 687, Nuisance, B; Id., p. 54; 2 Chitty's Cr. Law 577; *Commonwealth* v. *Low,* 3 Pick. 409; *Regina* v. *Sainthill,* 2 Ld. Raymond 1174; S. C., Salk. 359.

2. In this case there was no highway leading to the bridge laid out, according to the laws of this State, and there could, therefore, be no public highway. Comp. Stat. 144, ch. 57, sec. 7.

On the Boscawen side no application of any kind to lay out the road is shewn, and this was necessary by the express language of the statute. See N. H. Laws, 1815, page 335; *Pritchard* v. *Atkinson,* 3 N. H. 335; *Wiggin* v. *Exeter,* 13 N. H. 307.

There was no written petition for laying out the road in either town, which was necessary. Laws, 1815, p. 335, sec. 2; *Pritchard* v. *Atkinson,* 3 N. H. 335.

There was no notice to land owners, nor any award of damages in respect to the road on either side of the river.

The evidence, at least in respect to the road in Boscawen, did not tend to show a dedication, but an attempt to lay out by the selectmen. See *Greenleaf* v. *Quimby,* 2 Foster 338. It did

not appéar that the owner knew of the use of the road, or was not under some disability.

3. There can be no highway leading to this bridge by dedication. Comp. Stat. 144, sec. 7. And there was in this case no evidence of a dedication, or none of so decisive a character as to authorize the court to determine it as a matter of law, without submitting the question to the jury. A mere throwing open the road is not conclusive. *Barker* v. *Clark*, 4 N. H. 380; *State* v. *New-Boston*, 11 N. H. 416. Nor an uninterrupted use for twenty years. *State* v. *Nudd*, 4 Foster 327. The use of the way in connection with the toll-bridge, and as an appendage to it, is not evidence of its dedication as a public highway. Cro. Jac. 100; *State* v. *New-Boston*, above cited.

The intention was material, and here it was only to furnish an avenue to a toll-bridge, in which the land owners probably had an interest. *Roberts* v. *Barr*, 1 Camp. 262, n.; *French* v. *Marston*, 4 Foster 440.

If there was a license, or throwing open of the road by the land owners, it was for a specific use and purpose, and cannot be changed or extended. 4 Foster 440, and cases cited. And the assent, if any, on the part of the town authorities, was to a way for a specific purpose only. *Stafford* v. *Coney*, 7 B. &. C. 257. If the question had been whether there was a license, or whether it was general or special, the question should have been submitted to the jury. *King* v. *Northampton*, 2 M. & S. 262.

*Bartlett*, (with whom was *Quincy*,) for the State.

The defendant desired the court to decide, as matter of law, that the roads connecting with the bridge were not public highways, and to rule that therefore the neglect to build the bridge was no nuisance. So far as it was necessary that the bridge should connect with highways, to give the commissioners jurisdiction, their report is conclusive; 4 C. & H.'s Phila. Ev. 209; *Van Sleenburgh* v. *Bigelow*, 3 Wend. 42; and the judgment of the Court of Common Pleas, establishing the bridge, cannot be impeached here. *State* v. *Gilmanton*, 14 N. H. 474; *State* v. *Boscawen*, 8 Fost. 224.

I. Here was evidence for the jury that these roads were highways legally laid out. A written petition was not necessary under the act of 1791. Laws, Ed. 1815, p. 385, § 1.

There is reason to hold that "application" does not mean written application, because many roads have been laid out without written petition, and the statute having been changed, such construction cannot affect present proceedings. *Pritchard* v. *Atkinson*, 3 N. H. 335, only decides that *an* application was necessary. The remark of the court as to written applications was not intended to state the law, but to suggest the better course. The language of the court, and the results of the decision, are inconsistent with defendants' interpretation of the case; and so are *Pritchard* v. *Atkinson*, 4 N. H. 9, and *Hopkins* v. *Crombie*, 4 N. H. 520; though, in the latter case, perhaps there is a slight confusion of legal laying out and dedication. Two years after the publication of *Pritchard* v. *Atkinson* the legislature ádopted its suggestion. Laws, Ed. 1830, p. 573, § 1. At the same time a construction like that we contend for was made of the statute as to poor debtors. Laws, Ed. 1815, p. 154, § 2; p. 155, § 1; *Keay* v. *Palmer*, 5 N. H. 49. The reasons of that case apply equally to this. See *Gilmore* v. *Holt*, 4 Pick. 258.

The defendants find no case precisely to the point they contend for. The practical interpretation of the statute was such as the government here claims. In construing early statutes the usage is to be considered, and in doubtful cases it will control. *McKeen* v. *De Lancy*, 5 Cranch 22; *Attorney General* v. *Bank*, 1 Ird. Eq. 71; *Cheshunt* v. *Strome*, 16 Ohio 599; *Kermain* v. *Hills*, 1 La. Ann. 435. It is for the interest of community that early public proceedings be upheld. Were it necessary, after so long a user, a written petition might be presumed. There was an application for the Canterbury road. The Boscawen road having been laid and used more than twenty years, a jury may well presume an application. *Pritchard* v. *Atkinson*, 3 N. H. 339; *Greeley* v. *Quimby*, 2 Foster 338; *Robbins* v. *Bridgewater*, 6 N. H. 527; *Kidder* v. *Jennison*, 21 Vt. 113; *State* v. *Bigelow*,

State *v.* Boscawen.

34 Me. 245; *Colden* v. *Thaxter*, 2 Johns. 424; *Commonwealth* v. *Belding*, 13 Met. 11; *Sage* v. *Barnes*, 9 ditto 365. These cases go upon the ground, not of a dedication, but a presumed legal laying out. Part of the proceedings being shown regular, after a long user and acquiescence of all parties, the rest may be presumed. *Sprague* v. *Letherby*, 4 McLean 442; *Brownell* v. *Palmer*, 22 Conn. 107; *Cavis* v. *Robertson*, 9 N. H. 527; *Thompson* v. *Carr*, 5 N. H. 518. The law required a record of the return only. Laws, Ed. 1815, p. 385; *Haynes* v. *Shackford*, 3 N. H. 11. The rest falls within the ordinary presumption of the regularity of proceedings not of record, after a long lapse of time. 1 Greenl. Ev. § 20. In *Greeley* v. *Quimby*, cited by defendants, the objection was that the record was not produced, or its loss shown.

An application would have given the selectmen jurisdiction; and after this lapse of time a waiver of such objections as defendants set up is to be presumed. Besides, the defendants, not being the party injured, could not avail themselves of such objections. *State* v. *Raymond*, 7 Foster 388; *State* v. *Richmond*, 6 Foster 244; *Guernsey* v. *Edwards*, 6 Foster 222. The cases cited by the defendants, where the proceedings were quashed for want of notice or award of damages, are on *certiorari*, seasonably and properly brought, and not on exception of parties not injured, and collaterally.

Upon the evidence, then, the jury might have found these highways legally laid out, and the court could not say, as matter of law, that they were not so.

A portion of defendants' argument confounds a verdict by consent with a verdict by direction. A verdict by consent establishes all the facts that a jury might legally find on the evidence. Had defendants wished to controvert any fact that it was competent for the jury to find on the evidence, they should have done so earlier, and before the jury. If this be correct, the other instructions become immaterial.

II. Here was competent evidence of a highway by dedication. Section 7, chap. 53, R. S., applies only to roads thereafter to be

dedicated, or then in the process of dedication. Its terms are future. The common law established highways by dedication on ground of public utility, and it is not to be supposed that the Legislature, by a single ambiguous clause, intended to shut up legally existing highways in disregard of the public interest.

Were the language doubtful, the statute being in derogation of the common law is to be construed strictly. Story on Cont. § 667, n. 3 ; *Smith* v. *Moffat*, 1 Barb. 65 ; *Gibson* v. *Jenness*, 15 Mass. 205.

Statutes are not to be construed as retrospective unless the language and intent clearly demand it. *Quackenbush* v. *Danks*, 1 Denio 128 ; *Hastings* v. *Lane*, 3 Shepl. 134 ; *Torrey* v. *Corliss*, 33 Me. 333 ; *Garret* v. *Doe*, 1 Scam. 335 ; *Barney* v. *Mayor*, 19 Ala. 707. So the similar statute, 5 and 6 Wm. 4, has been construed. 1 Russell on Crimes 354 ; *Queen* v. *Westmark*, 1 Mood. & Rob. 305.

Here was ample evidence for the jury to find that there were highways by dedication prior to 1842. The cases cited by the defendants are where the circumstances show that there was no intention of the land-owner to devote his land permanently to the public use ; but the facts here are otherwise, and bring that case within the numerous decisions in our own Reports.

If the land-owners were under any disability, the burden of proof is on the defendants. 3 C. & H. Phil. Ev. 542, 553 ; *Regina* v. *Petrie*, 24 L. 271.

That the bridge was swept away does not alter the case. 4 Bac. Abr. (Ed. 1854) 667, n. ; *Collier* v. *Moulton*, 7 Johns. 106. Were it necessary, the subsequent user brings the case within *Frink* v. *Colman*, Hillsborough, December term, 1849.

III. The rulings asked for by the defendants were immaterial, for if the public had other means of access to the bridge than by highways, it was a nuisance not to build it. *State* v. *Boscawen*, 8 Foster, 226.

1. Here was competent evidence of an easement in the public. The public may acquire a way that is not a public highway under our statutes, which perhaps the towns are not bound to

repair in this State ; and in which the public may have a qualified instead of an absolute right to pass.  *State* v. *Boscawen*, 8 Foster 226 ; *State* v. *Strong*, 25 Me. 298 ; *Davis* v. *Stevens*, 7 C. & P. 570 ; *Stafford* v. *Coney*, 7 B. & C. 257 ; 3 Chit. Cr. L. 577, 589, 592 ; 2 Greenl. Ev. § 662–4 ; 3 Kent. 451, n.   See also *State* v. *Nudd*, 3 Foster 336 ; *Rex* v. *Northampton*, 2. M. & S. 262.   The public may have the easement of rafting or of a towing path.   *Scott* v. *Wilson*, 3 N. H. 325 ; *Blundell* v. *Catterall*, 5 B. & Ald. 268 ; *Rex* v. *Tippet*, 3 B. & A. 193.   So of landings and other easements ; and they may as well acquire the right to pass and repass.

The defendants object that the right is limited to a toll bridge, but without evidence we apprehend the Court will not presume that the object of the traveller was to pay toll rather than cross the river.

2.  The jury might have found the easement existing in the inhabitants of the two towns.   *Knowles* v. *Dow*, 2 Foster 387 ; 2 Greenl. Ev. § 542.

Inhabitants of towns may have common lands by grant, may prescribe for the right to haul and stack sea-weed on private land ; for landings, commons, fisheries, and various easements, and as well for ways.   *Denton* v. *Jackson*, 2 Johns. Ch. 320 ; *Knowles* v. *Dow*, 2 Foster 387 ; *Avery* v. *Stuart*, 1 Cush. 501 ; 1 Saund. Pl. & Ev. 400.

A grant of way may be presumed to a town as to an individual. *Commonw.* v. *Low*, 3 Pick. 413 ; Ang. & A. Corp. 213, 218.

In this case a large enough portion of the public—all on whom the burden would fall—would have access to it, to make it publicly useful.   *State* v. *Boscawen*, 8 Foster 226.

3.  The instrument signed by Clough and Gerrish was a written license on good consideration.   Were it held to terminate at their death, they having been dead more than twenty years, the right may well have been acquired by adverse user.   In any event, here is a license to pass over both roads—they having been thrown open to the public and used for a long time without objection — and, whether revocable or not, it gives the public a

present right of access to the bridge. *Doe* v. *Wilson*, 11 East 56 ; *Knowles* v. *Dow*, 2 Foster 410. Therefore, as the jury might properly have found, upon the evidence, that these two roads were legally established highways, or that the public, or a considerable portion of them, had means of access to the bridge, the ruling desired by the defendants was properly refused.

EASTMAN, J.* The defence to this information rests upon the ground that the bridge and road which were laid out in 1848, and for the non-building of which the information was filed, do not extend to, nor are they connected with any highway, and that consequently, there being no public avenue leading to them, they can not be nuisances liable to indictment.

Waiving the question how far the provision of the Revised Statutes, which is relied upon by the defendants, should be held to govern a case of this kind, we are of opinion that the defendants are not in a position to say that there is no highway " laid out agreeably to statute law," leading to this bridge. The verdict having been taken by consent, the jury are presumed to have found whatever the evidence will warrant.

In *Guernsey* v. *Edwards*, 6 Foster 224, it was held that a party, to take advantage of an illegality in the laying out of a highway, must be in a legal position so to do. And in *State* v. *Richmond*, 6 Foster 232, where this doctrine is very fully and ably considered, it was held that the laying out of a highway by selectmen, in cases where they have general jurisdiction of the subject, is not void, in the strictest sense of the term, although the course of proceedings prescribed by the statute may not have been followed : That such laying out may be confirmed and the objections to it waived by the parties interested, and that it can be avoided only by those whose rights and interests have been disregarded by the neglect to comply with the law. This doctrine of these cases was reëxamined and reäffirmed in *State* v. *Raymond*, 7 Foster 388.

* PERLEY, C. J., and FOWLER, J., having been of counsel, did not sit.

This bridge and road were laid out in October, 1848, the former bridge having been carried away by the ice in January, of that year.

In 1820 the selectmen of Canterbury made a return of a road leading to the bridge, and that road was made by the town and used by the public up to the time that the bridge was carried away in 1848.

On the other side of the river, the selectmen of Boscawen, in 1826, likewise made a return of a road leading to the bridge, which was soon after made by the town, and has always been kept in repair by them, and the public have used it ever since it was made.

Here was a laying out of the road on both sides of the river, by the proper authorities — the selectmen of the respective towns; a record was made of the laying out, and the roads have been made and used for more than twenty years in pursuance thereof; and the towns are not now in a position to say that all the particular requirements of the statute were not strictly adhered to in the laying out.

They are not highways attempted to be established by dedication, and therefore do not come within the condemnation of the statute referred to, which provides that no road leading to a toll bridge shall ever be deemed a public highway unless the same shall be laid out agreeably to statute law. But so far as these towns are concerned they are highways laid out according to the statute. After being duly returned and recorded according to law, and made by the towns and used for more than twenty years, the presumption is that all the proceedings required by the statute were followed. At all events, the towns cannot be heard to say that they were not. Such is the doctrine of the cases alluded to, and we think it the true rule.

This conclusion does not conflict with the rule laid down in *Pritchard* v. *Atkinson*, 3 N. H. 335; cited by the defendants. That was an action brought for a breach of covenant against incumbrances; the alleged incumbrance being a highway across the land conveyed; and the plaintiff failed in his action, because

it appeared that the laying out of the highway through the land was not legal. But the parties to that action were neither privies nor parties to the laying out of the road, and as such were not bound thereby; yet even there *Richardson*, C. J., says that where a highway has been made in pursuance of a laying out by selectmen, and has been used for a considerable time as such by the public, without interruption, a jury would be warranted in presuming *that there was an application and notice,* and that the damages were in some way adjusted, although nothing appeared in the record on the subject.

And so with the case of *Greeley* v. *Quimby*, 4 Foster 335, which is cited by the defendants. That, also, was an action between private individuals, where the validity of the laying out of a highway came in question, and in no way conflicts with the doctrine of *State* v. *Richmond.*

The town of Boscawen was a party to the laying out of the road in that town, and Canterbury to that on the other side of the river. In fact, the roads were laid out by the constituted agents of the towns. And although the acts of the selectmen would not bind the towns unless legally done, yet the towns, having acquiesced in the laying out, having made the roads and kept them in repair for over twenty years, and they and the public having used and occupied them for twenty years and more, they are now estopped from denying the regularity of the proceedings. They cannot now say that the roads were not laid out according to statute.

The settlement of this question disposes of the case, and renders it unnecessary to examine the other questions.

*Judgment on the verdict.*